Good morning. May it please the Court. My name is Glenda Carey and I'm happy to be here on behalf of Mr. Etienne Devoe. I'd like to reserve two minutes for rebuttal. Mr. Devoe was convicted of two conspiracies, distribution of drugs and money laundering. There are two issues raised in this appeal. The first is the government agents interpreting texts and phone conversations. Were they clear statements within the purview of the jury or were they ambiguous statements that needed interpretation? And the second issue is the Court's failure to instruct the jury on hybrid testimony. Counsel, didn't your client invite error with respect to the District Court not issuing a dual instruction regarding his testimony? No, Your Honor. I would submit that he did not invite the error. It is true that the prosecution brought up the issue and was doing a good job of submitting that we need to have this instruction for the jury. The attorney, Mr. Devoe's attorney, agreed and told the Court, you know, that's fine, I think was his direct words when the prosecutor suggested that we instruct the jury. But the Court, we have a concurrence among the attorneys that we need to instruct. The Court disregarded it. Yeah, I have a slightly different take on it, I think, perhaps than Judge Smith. It seems to me, though, that we would be reviewing for plain error because there was no objection at the time to the failure to give that instruction. Is that— Yes. Is that appropriate? And I guess to get to the heart of it, what is the prejudice? I know it's an unusual practice that our Court has set out with this sort of layperson-expert dichotomy, but what specifically is the prejudice in this case? Well, I would submit that a defendant is prejudiced when the jury does not receive accurate instructions. Particularly in this case, it was extremely important due to the lack of other evidence implicating Mr. Devoe in this conspiracy. We don't have any drugs that he was involved with, any surveillance of him, buying, selling, no possession or distribution. So these interpretations were extremely important. These two officers' testimony were the bulk of the case, and the government concedes that in its brief, that here the interpretations and the instructions to the jury were of utmost importance. It's not just a side issue. Given that that's the case, I understand that this issue was raised in the pretrial conference, no objection. Your side asked door questions that created the problem that brought in the thing you're complaining about, and then during the sidebar, it was agreed it was okay for the Court not to instruct the jury about anything except the signal theory. How can you now complain about that? Well, I wouldn't agree that he agreed that it was okay for the Court not to. I mean, it was brought to the Court's attention that we need this instruction, and the attorney said that's fine. And so I think we— Doesn't that pretty much concede it then? Concede that the instruction is necessary. Oh, I thought you said that it was okay not to have it. No, no, that it was necessary. The prosecutor wanted it. The prosecutor did a good job. But the Court said, no, I don't need to instruct. You know, he disregarded both attorneys' agreement there. Well, let me get down to the question that my colleague raised, which is basically this is plain error, so you've really got to show that there's a real miscarriage of justice and show there's real prejudice. And I, like her, I'm struggling to see how it would have been different. You have a burden on that, as you know, a heavy burden. How does this make the trial really unfair since everything was acquiesced in up to that point? Well, I would draw the Court's attention to the Toralba-Mendia case, which is distinguishable regarding the prejudice here because there— it was plain error but not prejudice because there was a clear bifurcation of the testimony, so the jury was aware of that. There was adequate foundation laid, and there was sufficient corroborating evidence. And here we don't really have corroborating evidence. This is the crux of the case. So I think when the evidence is focused on these narrow interpretations and the agents being allowed to testify, it's clear that the Vera case, that it is plain error, and that courts are to be vigilant in instructing the jury. What testimony do you think got to the jury that shouldn't have gotten to the jury? I mean, you haven't objected on that basis. You're just saying the jury should have been told something about which witness was which because their testimony may have affected the outcome. So what testimony would have been different? Well, I mean, this argument just has to do with the instructions. That's sort of my problem. I don't see how the instruction could have made any difference as long as the testimony had already been provided. If you had an objection that said this witness shouldn't have been allowed to offer X testimony and X testimony had an impact, that argument I understand. But that's not the argument. The argument is somehow the jury didn't distinguish in their minds between expert and lay, and that influenced somehow, and I can't figure out how it could have made any difference. At that point, they'd already heard what they'd heard. Well, I would submit that that's my first argument, is that the jury heard a lot of evidence and interpretation of evidence that they shouldn't have heard. But if we disagree with you about that, assume for the sake of this question that we don't agree with that, then the prejudice question, to me, is harder. It's hard anyway because when I'm looking at prejudice, I'm thinking, how would the outcome have potentially been different? How would a juror have responded differently to what they had heard? Well, I would submit that it's pretty important for the jury, when they have all sorts of instructions and all sorts of evidence coming in, that when we have hybrid testimony, that it's imperative that they listen to the judge tell them that when you analyze this, you need to make a clear distinction in your mind about whether we give him added deference because he's an expert here or this is his lay interpretations. I think they can't just be instructed the normal instructions, and that's sufficient. I think in this scenario, in light of the importance of these interpretations, they needed to – Doesn't Freeman really sink that aspect of your case? Which Freeman case? I'm referring to the one – The Ninth Circuit, Kevin? The 1998 Ninth Circuit case, right? No. I would disagree. I think the Freeman case said that the district court needs to be a vigilant gatekeeper. It also permits the very kind of testimony that we're talking about here, does it not? Another distinction, though, is with the Freeman case, the court didn't fault the district court because the court didn't intervene sua sponte, and here, however, we didn't need the court to intervene sua sponte. We had it brought to the court's attention that this instruction is needed. So it's not – But, again, I get back to what several of us have raised. It seems to me that counsel basically acquiesced, and they talked about it in pretrial, went ahead and asked the questions of the juror, and at the sidebar didn't seem to object. As I read the testimony, you seem to suggest that counsel kept saying he wanted it, but I don't see that. Where is it in the record? Well, I wouldn't say he kept saying he wanted it, but when the prosecutor brought it up, he said that's fine. And I think pretrial, I believe there was an agreement that, yeah, if we're going to have both, we're going to have this instruction. But then the prosecutor said, well, we're not going to have both. I submit that they did have both even. Well, it came out somewhat differently. The prosecution, I think, asked only the expert piece. What do these different terms mean? And then cross-examination brought up the role in the investigation and the fact witness thing. So from the prosecutor's point of view, what they had done so far didn't require the instruction. As it turned out, the instruction should have been given. But prejudice is still a question in my mind. Well, I would submit it doesn't matter if it's the prosecutor that was asking the questions. I don't disagree with that, but you do have to establish prejudice to your client from the absence of the instruction. And I would submit that it's due to the centrality of this officer's testimony because it is so imperative what this limited evidence of a conspiracy and the officers are allowed to submit their interpretations over and over, and then the court doesn't make it clear to them how to evaluate. So I think that is prejudice because it's essential. I mean, having the jury decide the facts and be clear on the law is just imperative. We've asked a lot of questions, so you may have a minute for rebuttal when the time comes. We'll hear from the government. Good morning. May it please the Court, my name is Joanne Harrington, and I'm here on behalf of the government in this case. To jump right into the question, into the issue that focused most of your attention during the opening argument, I agree that this issue is waived, the issue as to whether or not there should have been an instruction. How can that be waived? Don't we review for plain error when there was no objection? Well, we do, except when it is clear that the party that's speaking to raise the issue was affirmatively aware of the right. So what? I don't understand why that's different from plain error review. Plain error is when the judge should have, on his own, without either of the parties before him recognizing it, should have recognized that there was a problem and taken steps. In this case, the defense can always waive their right. Well, they would waive it if they had said to the Court, don't bother to give that instruction. We're happy without the instruction for whatever reason. They may have had a strategic reason. That didn't happen here, so where's the waiver? That's an affirmative giving up of a right to something, as opposed to just not thinking to object. Well, I don't want to spend too much time on this because, in fact, it's plain error and there's no reversible error anyway. But I think if you read the exchange and if you take into account the fact that this issue was raised, the defense was aware of it, there was a discussion as to whether or not an instruction was needed, and the defense did not ask for one. But that's in the absence of waiver. Waiver is an affirmative giving up of a right. And so I didn't see anything where defense counsel said, we don't want that instruction. Don't give that instruction. Is your primary argument one of invited error as opposed to waiver? Well, I believe that when there is invited error, there is waiver. I don't see why it's invited either. The cross-examination created the need for the instruction, but then the failure to ask for the instruction is just a failure to ask for the instruction. I guess I don't understand why the fact that cross-examination caused a dual sort of testimony does anything to tell the court not to give the appropriate instruction when that happens. I just don't understand the connection there. Well, I believe that when an issue is discussed between the parties and the court, and the court indicates that it doesn't think that an instruction is needed, and the party who has the burden to make the objection says okay, then I think that they have waived it. But let's move to whether there was any error at all, because under plain error review, this is not reversible error. Would you go right to prejudice, because that's where I end up, and that's, it seems to me, it's a necessary element of showing plain error. What is the prejudice? I think that the issue of prejudice is wrapped up in the question of whether there was any error here at all. Well, there was testimony both as an expert and as a lay witness, correct? That's correct. Okay. So our cases say in that situation there's supposed to be an instruction. So I want you to assume, for the sake of my question, that it was erroneous on the part of the court not to give the instruction. What's your response to the prejudice argument that was made, that this officer's testimony was central and there's really not much evidence of a conspiracy otherwise? Well, I do hate to assume that because I don't think it's the case, but I will. You don't have to help me out if you don't want to. Assume it. Go from there. But in this case, the reasons for the instruction aren't here. In this fairly unique factual setting where it's not the prosecutor who has used one witness and mixed up the case. Absolutely. You're not answering my question at all, and you're free not to do it, but it would really be helpful to me if you're willing to answer it. I'm sorry, Your Honor. I'm trying to explain why there was no prejudice in this situation because in this situation where the defense is the one who is asking the fact questions, the fundamental problem that all of this court's decisions have identified with a dual-role witness isn't there. That fundamental problem is that the jury might give undue deference to the witness's testimony as a fact witness because of… Well, they still might do that. They don't know the difference between regular and cross-examination. What was the other evidence of conspiracy here? And it was only step one. That's the concern is that they might give undue deference. Here, if they gave undue deference to the answers that the defense counsel was asking, that's what the defense counsel wanted. The defense counsel was trying to get some facts out of this witness, the facts that no drugs had been found and no drugs were ever seized in Mr. DeVos' possession. And if the jury said, oh, he's an expert, he must know, and gave deference to that, that's exactly what the defense wanted. So there could be no prejudice in order to the benefit of the defendant, given the unusual factual situation posed. What was the other evidence of conspiracy? The evidence of conspiracy was primarily the conversations. This case was based on primarily taped conversations between Mr. DeVos and his co-conspirator, his main supplier, Mr. Taylor. That's the most important evidence. There was also evidence that when Mr. DeVos was arrested, there was evidence of drug dealing in the location where he was, that he was a drug dealer. And there was 404B evidence that a very large seizure of cocaine had been made some months before this particular conspiracy was charged. That was basically the evidence in the case. So I don't dispute that the taped conversations were important evidence in this case. They were. To jump back to the first issue in this case, which is whether there was improper opinion testimony and that the expert and our law enforcement officer interpreted the meaning of common terms that were clear to the jury. First of all, I question, although it's improper testimony, I question whether that could ever be reversible error. Freeman discusses that very point where, in that case, the witness defined the word particulars to mean details. That seems obvious. The jury probably understood that when the word particulars was used, that the speaker meant details. But the court found that the error was harmless, and it makes perfect sense. If all the witness is doing is explaining what is obvious to the jury, it can't possibly have an effect on the jury's verdict. It looks like my time is just about up. Are there any other questions? I don't believe so. Okay. Thank you very much. Thank you. And you may have a minute for rebuttal. Counsel, since we have so little time, let me just ask you quickly, what evidence came in from the officer that you believe is most damning and should have been stricken under the guideline of Freeman? I'm glad you asked that. I've got six statements. One, I'll be ready in a few days. Two, stepping it up. Three, I'll just wait until you know. Four, we don't both be out there. Five, you ready yet? Six, where are you at on the count? All of these statements are common words used in common ways, and they were interpreted at length by this officer, Officer Doar, who gave both expert and lay opinion. And this was during direct examination, and the government submits that this is expert, but I'd submit that this isn't even expert. This is like an expert on the English language. He gave on page 25 of the government's brief, and 26, these statements are laid out, and there's full paragraphs as to what these one sentences mean, each of them. Let me ask you this, Counsel. If I recall the testimony correctly, defense counsel cross-examined the government's witness and tried to poke holes in all of this. Wasn't that, didn't that, if you will, overcome the problem that you're trying to show? In other words, if the witness misinterpreted something and the cross-examination didn't show that it was misinterpreted, doesn't that at least satisfy part of your concern that this was this vague term? Nobody knew what it meant, relying wholly on the officer, and there was nothing to challenge that. I would submit that these weren't these vague terms that were submitted, and the cross-examination didn't undo the harm that was done because each single little statement had a whole paragraph of the government's theory. They were allowed to just repeat over and over again, this is a supplier and a distributor having a drug transaction, and that was closing argument, but they were allowed to do it with every question, another whole paragraph about why this is a conspiracy, why this is a drug transaction. And these are simple little words like, I'll be ready in a few days. What that means is this supplier, you know, it's completely unnecessary, unhelpful under Rule 701 and 702. So how does the government try? I mean, it's well known that in drug deals or gang situations that vernacular is used, slang of one kind or another. Is it your position that the government can't really try these cases because members of the jury probably will have no idea what the slang means? No, I would agree that the slang they can interpret. There are some words that were okay, like heasy, you know, and drug terms that were fine for them to interpret, but these are common words. Well, that's not how they interpreted it. And did the defense put on anything saying, no, that's not right? That's not what it means. They didn't even raise the question in the minds of the jury, did they? Well, I submit it's kind of hard to do. I mean, there could have been objections to saying that this is outside of his expertise. He's supposed to be an expert on drug distribution in Alaska, but instead he's allowed to testify about common words. He's an expert on English. But if you have a defense lawyer and the defense lawyer says, you know, it doesn't really mean why, and then maybe bring somebody else in as a witness to show that that really means why, just a common term, and that raises a question in the mind of the jury as to whether the government has proved its case beyond a reasonable doubt. Well, I would submit that a lot of these phrases aren't really X versus Y. It's like, you ready yet? And so you ready yet means are you ready, you know? Well, it's what it means maybe to you and me, but perhaps in a drug setting that has an entirely different meaning. That's the context that this arises. Yeah, I would submit that that's just the government's theory, and it's not evidence that the officer should be testifying to. Thank you, counsel. The case just argued is submitted, and we thank you both for your helpful arguments.
judges: Graber, Clifton, M. Smith